The next case, number 231432, Amy Rae v. Woburn Public Schools, et al. At this time, would counsel for the appellant, Amy Rae, please come to the podium and introduce herself on the record to begin? Good morning, Your Honors. Laurel Frankhor for the appellant, Amy Rae. May I reserve two minutes for rebuttal, please? Yes. Thank you. May it please the Court. This case, in part, deals with an issue which the ABA and several scholars have described as one of the most muddled areas in all of employment law. Specifically, we are dealing with the continuing violation doctrine. The appellant today is asking you to overturn the District Court's order of dismissal because the District Court failed to distinguish between the state and federal versions of this doctrine. In addition, the District Court made improper factual findings and analyzed the complaint using an evidentiary rather than a pleading standard. This case is one for retaliation brought by a school nurse who was the victim of a scheme of harassment perpetrated by her principal over years in an effort to shame her and to for students' rights. Both Massachusetts law and federal law recognize an exception to the statute of limitations in hostile work environment claims like this one under the theory of continuing violation. A continuing violation is one act comprised of repeated conduct over time, some of which may be past the statute of limitations. However, so long as one act occurs within the statute of limitations that is part of that same practice, all prior related acts are actionable and to be viewed as one single act. Counsel, may I ask you, do you view the discussion and analysis in the Morgan case to be applicable to all federal discrimination claims? Yes, I do, Your Honor. And can you explain why? Because it mostly deals with Title VI and Title VII, but ADA also had the same statutory scheme. So my claims involve the ADA and Section 504. And it's basically the same statutory scheme, it has the same language in terms of retaliation as a form of harassment or discrimination under both ADA and 504. So I believe that the cases would interpret it under the same rubric. Do you have any case law, though, that specifically uses the Morgan analysis for the types of claims that you've brought? I don't have any in this district, Your Honor, but I can, if you'd like, after the argument, I can get you cases from other districts that have analyzed the ADA and Section 504. Thank you, that would be helpful. Can I ask you another question? Did you make arguments, and you very well may have, I'm not suggesting you didn't, but below did you argue specifically about how the continuing violation theory should be analyzed under Morgan? Did you cite Morgan to the district court? Yes, I did in my brief, yes I did. In which brief? In the brief for the motion to dismiss. Thank you. Counsel, does your argument actually turn on whether Morgan has been, is applicable to the ADA and 504 claims? The district court seemed to say that there was no substantial relationship that would allow the continuing violation doctrine to apply, and I'm not sure that Morgan does apply to all federal statutes, much less state cause of action, but I'm wondering, do we really have to decide that issue? Decide the issue as to whether Morgan applies, Your Honor, is that the question? Yes, yeah, yeah. Does your case depend on us accepting that proposition? No, it doesn't, Your Honor, because this case involves a hostile work environment, so we come to claims for hostile work environment, Morgan is the lead case for those types of claims. I'm sorry, you started with your ADA and 504 claims. In order for you to reverse the dismissal under the ADA and 504, do we actually have to decide whether your argument that the Morgan rule applies not just to hostile environment claims, but to these different federal statutes? Do we have to decide that, or do you have an argument independent of that? I believe because this case invokes the hostile work environment, and Morgan deals with federal statutes, this case clearly falls under the rubric of Morgan. I'm sorry, all aspects of your case are on the hostile environment claim? I'm talking about claims for, we have the federal ADA claims, and then we have the state 151B claims. You have discriminatory retaliation claims, and you have hostile environment claims, and you have a state claim, correct? Yes. Okay. The thrust of my argument is that when it came to the ADA and 504 claims, and if you look in the decision by the district court, there's no reference to federal law at all, not even to the Morgan case or any federal law. It's very troubling because the district court under the ADA and 504 claims said, as it is appropriate, and then went on to talk about the standard of continuing violation under Massachusetts law, which is different from federal law. She did not cite any federal cases that dealt with any federal law in the section when she was analyzing the ADA and 504. Even if we accept your argument as to Morgan, aren't there also, though, discrete forms of adverse action here, like the denial of the transfer or the rejection from the leadership program? So would your client be barred from recovery on those injuries because they were sort of completed acts? I think, Your Honor, it depends on the definition of discrete acts. And this court and other courts have held that discrete acts are things that have tangible outcomes. And if you look at the timeline of events in this case, if we start in March of 2017, and we go from March 2017 until the time of filing suit and after, the only actions that were taking place were my client was complaining about her situation, but there were no discrete acts taken against her. The first discrete act that occurs is when she received a reprimand, and that was well within the statute of limitations period. That was in 2002. So no discrete acts outside of the limitations period? None that you would call that had the requisite definition of a discrete act as something that had tangible consequences. What we have here is that the fact pattern is very similar. Counsel, you go hire a lawyer to complain about it, and you complain to the union, you file a grievance, and you have your lawyer send letters to the school committee, and you're saying that is not enough awareness of your situation, that we should ignore all of that and do an independent analysis of whether there were tangible effects. I mean, she seems to have conceded there were tangible effects, or she wouldn't have taken those actions. Well, Your Honor, this case, again, is very similar to the facts in Thule. And in Thule, that involved a person who was complaining to her superiors about the fact that even in Thule, that person had hired a lawyer. And the court held that protests are not the same as discrete acts. And one of the reasons is because you should not penalize a person for protesting. Counsel, I understand your argument, but if we look at the complaint, I guess what I want to find out is do you agree that the doctrine seems to be fairly clear that even understanding a hostile work environment to be a continuous ongoing situation, that to the extent that there are discrete acts that fulfill the definition, a plaintiff needs to have filed suit about those at the time that they occur, that they don't get counted. Well, there is some split among the circuits as to whether Morgan required a judge to split the hostile work environment claim in half. So in other words, in the D.C. circuit, for instance, and in Colorado, they've interpreted Morgan to not require that if you have all the elements of a hostile work environment claim, and they satisfy all of the elements, and some of the acts in there happen to be discrete, that the Supreme Court wasn't requiring the judge to go and split and say, okay, now we have a discrete, we have a... That as long as it fell within the pattern. So that's one of the interpretations of Morgan. I'm not sure if this court has made its own interpretation as to whether that applies or not, but... So there is some argument that... Counsel, we do have cases, First Circuit cases, decided after Morgan, which continue to use the discrete act analysis, which historically we've used. Do you have any cases to the contrary? Where you haven't used the discrete acts? Where the court has continued to use the discrete acts analysis post-Morgan. The First Circuit has case law doing that. I'm asking if you have any contrary case law. No, I don't, Your Honor, but it's interesting to note that in all of the cases that involve continuing violation, so for instance, all of the cases that the judge cited in the district court, all of the cases in all of our appellate briefs are done at the summary judgment level. So certain parts of that determination of whether it is a discrete act involves findings of fact, and findings of fact, for instance, what a person knew and when they knew it. It involves whether there is a causal relationship. And this court has said that issues of causation, especially in regards to discrimination cases, are what they call the grist for the jury's mill. So even if we agree that this analysis was an appropriate one by using the discrete acts, it's not appropriate at the motion to dismiss stage. Okay, do you have any cases from the First Circuit? There are First Circuit cases affirming dismissal on the pleadings on the discrete acts theory. You know, you hire a lawyer, you file a grievance, there are those cases. I take it you're relying on Tuley? Was that the case you cited? Tuley, yes. Okay, any other case? O'Rourke has a very similar fact pattern, again, in that it was a person who made a series of complaints, and that was held to constitute a hostile work environment that the complaints themselves were not discrete acts, but it was, again, part of this protest. And I think that makes sense because continuing violation doesn't say that a plaintiff can never protest about her situation. But counsel, isn't there a difference between protesting, that that's what the plaintiff is doing, versus looking at what the employer did? I understood the discrete act analysis to be about that. So, for instance, when your client was reprimanded or when she lost pay for a day, those were things the employer did. So why wouldn't they be discrete acts? They're not protests because they're employer actions. Well, so you do have to look at the actions of the employer, but you also have to look at the effects of the action of the employer. So, for instance, there are cases in this circuit that say a review in and of itself is not a discrete act. A review that has consequences then is a discrete act. So, again, it's this very... Right, so you're looking at the actions of the employer. Did the employer do something that had an impact on the... Right, right. And what was that impact? But, again, these are all issues that are for the fact finder. What's disturbing about the case of the district court is the judge, in addition to keep referring to the Prima Fascia case, which is not the right standard, the standard that's an evidentiary standard, but also the district court kept saying, the record shows, the record shows. This is a motion to dismiss. There was no record. There was no evidence taken. There was no discovery. And so for her to go ahead and make decisions about things like state of mind or causal effects are not appropriate at the motion to dismiss stage. If I could delve a bit more deeply, when you say you have to look at the consequences, I believe your argument is that necessarily involves an inquiry into the state of mind of the plaintiff and, therefore, there can never be a motion to dismiss under the discrete occurrences. Well, I don't think I would take it to that extreme, but this court has said that in regards to things like discriminatory animus, even summary judgment should be granted very rarely. So I think, again, that it's more of a... I'm sorry. Let's go back to the question. I didn't ask about discriminatory animus. I asked about whether you are saying an inherent part of the discrete events putting, triggering an obligation to file something and, therefore, not within continuing violation. That's what we're talking about. Are you arguing that inherent in that must be, when you say you look at consequences, must be a subjective analysis of how the plaintiff felt about those discrete acts? I think it's... And, if so, what is the case law in support of that proposition? I think it depends on the nature of the discrete acts. So if it's something that, for instance, Morgan has said is very easily determinable, firing, things like that that are very easily to distinguish, then maybe it would be appropriate to dismiss on a motion to dismiss. But when it comes to things that are more nebulous, things that, again, involve what was the consequence, I do believe that that is a question that has to be answered with all of the facts. Thank you. Your time is up. All right, thank you. Thank you, counsel. At this time, if counsel for the appellees will please introduce herself on the record to begin. Good morning, Your Honors. May it please the Court, my name is Alexandra Gill on behalf of the defendants' appellees. That is, Woburn Public Schools, City of Woburn, Carl Nelson, and Matthew Crowley. Your Honors, the District Court properly dismissed Ms. Ray's complaint for a variety of reasons, and I will agree with counsel for the appellant that your decision today is not dependent on the adoption of Morgan as to all federal claims relating to the continuing violations doctrine. There are several other grounds on which you can affirm the District Court's decision. Ms. Ray failed to plead any conduct that was sufficiently severe or pervasive to meet the standard for a hostile work environment claim. She made no causal connection between any of her alleged advocacy, and it's difficult to find any advocacy within that 130-some-odd-page complaint. And furthermore, any of the earlier conduct that we've discussed should not come in, and even if it does come in, if the Court does find it somehow is part of one continuous employment practice, it still fails for the same reasons that the other conduct that is timely filed should fail, meaning there's no causal connection and it fails to state a claim. Counsel, is that the issue of causation though really one that is normally for a jury? Courts don't normally assess causation based on a complaint, especially when you're supposed to take the complaint in all well-pleaded factual allegations we have to interpret to the benefit of the plaintiff, so can you cite any cases where causation was determined on a motion to dismiss? Not off the top of my head, Judge Ruckelman, but I will say that this is in my mind a unique case where we have 130 pages of allegations and exhibits to which the plaintiff points that give much greater richness to the factual allegations than you would normally find in a motion in an initial pleading. So in other words, when a motion to dismiss is typically filed and you're attacking the four corners of the complaint, there is usually not five or six exhibits that really show what truly happened. That's the kind of thing we would have found in discovery. I understand your argument, but I think the plaintiff attached documents that she thought supported some of her allegations. I don't think the plaintiff is suggesting that that's the only evidence that she would have if the case went forward in discovery, so it seems like you're treating it as if it is already a summary judgment record which it isn't, and I think that's what's concerning me. But if I could move you to something else, do you agree that the district court erred here when it applied state law to counts one and two to the federal law claims? I've read National Railroad v. Morgan many, many times. My understanding of it and my view of it is that it emphasizes the distinction between discrete and nondiscrete claims. I'm sorry, counsel. I think I'm just asking you maybe just one step earlier, and I'm sorry if I wasn't clear, but the way I read the district court opinion, the district court discussed only state law in evaluating those claims, the federal claims in count one and two, so even if you're right on Morgan and some other federal law governs, my question is, didn't the district court err here by applying state law to evaluate the substance of the federal law claims? There are so many overlaps to the analysis that if the district court did not clearly elucidate the permanency or lack of permanency aspect that is applicable to Massachusetts state law claims, then I believe it was harmless error because the outcome and the resulting conclusion should and was the same from the district court. In other words, regardless of whether or not that same awareness aspect applies, the district court reached the correct conclusion in the end. I noted that in your brief you certainly did not concede there was any error. It's not clear to me precisely what the district court was doing. It does start with a citation to three federal cases subject to the three-year statute of limitations and then it cites to continuing violation to a federal case that apparently applied Massachusetts state law but it applied set forth a three-part test which I think is pretty much the same as federal law and then says as characterized by the SJC and then it states the SJC's language that does seem to come to basically recite the same standard as the federal standard. It's just not clear to me exactly what the district court thought it was doing. But your argument is the standards that it applied are essentially the same to the extent they differ that wasn't what was at issue here and so it doesn't really matter. Am I correct? Well, your honor, I guess you may be correct if I understand the way you're phrasing it but I think my argument is that regardless of the application of the law there's no place for the continuing violation theory or the continuing violation doctrine to apply to these claims. Why? Well, the accrual of a cause of action is usually at the time the discriminatory acts occur. When you have a hostile work environment claim it's by its nature not one clear discreet act it's a series of events and the continuing violations doctrine operates as sort of a savings mechanism to protect those plaintiffs who would not otherwise be aware that they had a claim within a relatively short administrative agency filing time period. So, in those cases it's important it's still narrow but it's important we're not talking about that type of case here and Morgan wasn't either the Supreme Court in Morgan was dealing with a plaintiff who was aware of the acts that his employer committed but not of the actual cause of action. In Ms. Ray's case she has been saying for years and retaining attorneys and putting them on hold and sending demand letters for years that she's been the victim of a hostile work environment. She hasn't just been saying that the employer has acted a certain way towards her she's truly said on multiple occasions I am the victim of a hostile work environment and where you have a plaintiff that has that level of awareness of their cause of action I feel it would be so inappropriate and so contrary to the existing body of case law on these types of equitable tolling doctrines to apply it. But isn't that sort of exactly what the employers were saying in Morgan they were saying the employee here it's unreasonable that she shouldn't have brought this sooner. I believe in Morgan the court was was looking at it was a black employee who had been subjected to many years of racial epithets and mistreatment and was aware of that again it was aware of the acts of the employer but that plaintiff in Morgan did not say we don't have that information that the plaintiff ever said I have this cause of action and I'm not choosing to exercise it so in my mind and hopefully your minds as well we don't even get to the analysis of whether or not the difference between the discreet and non-discreet analysis applies because it's not an appropriate scenario for this type of equitable tolling doctrine which should be applied in very narrow circumstances the case law is clear that they should be used sparingly and I just don't think there's any place for it here if I have a little time left I would like to just talk about briefly how minor separating the discreet events which would be the denial of the transfer the suspension of a day without pay because she sent a letter and the one other thing it was may I have just one more minute thank you thank you Judge Montecalvo so apart from those discreet events which do fall outside the statutory time period the remarkably minor nature of being asked to come to a meeting when a principal receives a parent complaint or being asked to come to a meeting when the nurse provides a student with a t-shirt that advertises alcohol and the child is walking around the middle school with it these are the types of minor little quibbles that are essentially workplace skirmishes until you think of what the motivation was for the child to come to the school and the child was is walking around the school with a t-shirt  advertises alcohol and the and the child is  around the middle has a t-shirt that advertises alcohol and the  is walking around the middle school with a t-shirt that advertises alcohol and the child has a t-shirt that advertises alcohol and the is walking around  middle school with a t-shirt that advertises alcohol and the child has a t-shirt that advertises alcohol and the child has a t-shirt that advertises alcohol  child          both a t-shirt and a t-shirt and knitted sweaters and sandals with a tie at the chips that a jury could plausibly find that his calling her on the carpet about not being able to do her job and forcing somebody else to administer the medication. Are you saying a jury could plausibly conclude that that was motivated either by discriminatory animus or by a desire to create a hostile environment to retaliate against her? Because you have to look at the scope of how he handled the incident. So he could have called her on her phone. She had left a note for her supervisor saying I'm going to be right back. But what happened here is he paid her seven times in a short period of time. No other person has been paid. What's wrong with that one if there's a student who needs medical care? Because it wasn't a medical emergency. It was a normal thing. And what happened is he created this situation where when she came back into her office everybody said oh my gosh what happened? Did somebody die? Why were you paid so many times? Oh my gosh. She just basically this was a student who needed his insulin checked. But he created this situation where she was meant to be oh she created this emergency. The rest of the day people came up to her and said my gosh what happened? Why were you paid seven times? It was disproportionate. You're well over your time. Thank you. Thank you. Thank you. Thank you counsel. That concludes argument in this case.